**Stephen J. MEE, Plaintiff,**

v.

**JEFFERSON COUNTY SHERIFF'S DEPARTMENT, Harold Bray, Sheriff, Department of Corrections, Division of Community Services, Jose C. Ortega, Greg Sides, and the State of Colorado, Defendants.**

No. 90–C–264.

United States District Court,
D. Colorado.

Aug. 31, 1990.

Jeffrey Herren, Lakewood, Colo., for plaintiff.

William Eggert, Gregg Kay, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Stephen J. Mee commenced this civil rights action alleging: (1) violation of his rights protected by the Fifth Amendment to the United States Constitution; (2) malicious abuse of process; (3) intentional infliction of emotional distress; and (4) outrageous conduct. The case has been dismissed as against all defendants except Jose Ortega, Mee's parole officer, and Gregory Sides, Ortega's supervisor. Both Ortega and Sides have moved for summary judgment asserting, *inter alia*, that they are immune from suit. Plaintiff has responded by opposing the motion.

The parties have fully briefed the issues and oral argument would not materially assist the decision process. Jurisdiction is founded on 28 U.S.C. §§ 1343 and 1331, as well as this court's pendent jurisdiction.

### I. Facts.

On February 14, 1989, while Mee was on parole following incarceration for a 1979 aggravated motor vehicle theft conviction, the Arapahoe County Sheriff's Department received a report that he had verbally threatened one Albert Torrez. An Arapahoe County deputy sheriff investigated the report, and arrested Mee. Upon learning of Mee's arrest, Ortega, in his capacity as a parole officer, initiated parole revocation proceedings pursuant to Colo.Rev.Stat. § 17–2–103 (1986 Replacement Volume). At the same time, unrelated harassment and criminal tampering charges were pending against Mee in Jefferson County.

Asserting that his arrest and continued incarceration were illegal, Mee filed a petition for writ of habeas corpus in the state District Court for Jefferson County, Colorado. On March 14, 1989, a hearing was held. Relying on Ortega's testimony that the Arapahoe County district attorney's office intended to prosecute the harassment complaint against Mee, the state district judge concluded that Mee's arrest and detention were appropriate and he denied the petition. Two days later, the parole board declined to revoke Mee's parole and he was released.

Although he did not so assert in his complaint, Mee now claims that Ortega perjured himself at the March 14, 1989, habeas corpus proceeding. It is unnecessary for me to resolve this disputed factual issue to rule on the defendants' summary judgment motions. In their motions, the defendants contend that at all material times they were acting in their official capacities as parole officers performing quasi-judicial functions, and therefore they are absolutely immune from suit.

### II. Absolute Immunity.

In *Tripati v. United States Immigration and Naturalization Service*, 784 F.2d 345 (10th Cir.1986), the plaintiff alleged that two federal probation officers had made false statements in a pretrial bond report and a presentence report. The court held that "when, as here, the challenged activities of a federal probation officer are intimately associated with the judicial phase of the criminal process, he or she is absolutely immune from a civil suit for damages." *Id.* at 348. *Tripati* may be distinguished in three ways: (1) the defendants were federal, rather than state probation officers; (2) the plaintiff alleged that the defendants had made false statements in a pretrial bond report and a presentence report rather than at a habeas corpus proceeding; and (3) the *Tripati* defendants were acting as federal probation officers whereas the instant defendants were acting as state parole officers. I conclude that all three distinctions are without a difference, and none of them would justify a different result here.

There is no logical reason that federal probation officers should have immunity

but state parole or probation officers should not. Their quasi-judicial functions are not legally distinguishable. In reaching its conclusion in *Tripati*, the court expressly agreed with the eleventh circuit's conclusion in *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir.1984). In *Hughes*, the court held that *state* probation officers are absolutely immune. I conclude that state probation and parole officers enjoy the same immunity accorded to their federal counterparts while engaged in quasi-judicial functions. *Tripati* characterized as protected by immunity those functions intimately associated with the judicial phase of criminal procedure.

■ The final question therefore is whether the defendants' activities were "intimately associated with the judicial phase of the criminal process...." *Tripati*, at 348. If so, the defendants are absolutely immune. There can be no question that the defendants enjoy absolute immunity in their decision to initiate criminal proceedings against Mee. *See Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976). The only issue remaining is whether the defendants can be subjected to liability for their activities, including testimony, that led to Mee's continued incarceration.

The applicable Colorado statute, Colo. Rev.Stat. § 17–2–103(5), requires that not later than ten working days after a parolee's arrest, a parole officer shall complete an investigation of the circumstances surrounding the arrest and either: (1) file a complaint with the parole board; (2) order the parolee released and request that any warrant be quashed, the complaint be dismissed and parole be restored; or (3) order the parolee released and issue a summons requiring that he or she appear before the board to answer charges.

Here Ortega and Sides assisted the court in deciding whether Mee should be released prior to his parole revocation hearing, and further assisted in the decision whether his parole should be revoked. Ortega's testimony at the habeas corpus proceeding was an integral part of this judicial process. Therefore, following the rationale of the Tenth Circuit's *Tripati* opinion, I conclude that these two defendants are absolutely immune from suit.

### III. No Allegation That Sides Was Personally Involved.

■ The case against the defendant Sides must be dismissed for an additional reason. An essential allegation in a civil rights action is that the defendant personally participated in the action about which the plaintiff complains. *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir.1976). Mere vicarious liability is not sufficient, and therefore a supervisor may not be held liable merely because of his supervisory position. *Pembaur v. Cincinnati*, 475 U.S. 469, 476, 106 S.Ct. 1292, 1296, 89 L.Ed.2d 452 (1986). In his complaint, Mee alleges that Sides knew of and approved Ortega's activities. However, Mee has not presented any evidence that Sides was personally involved in the decision to arrest or detain him. Mere allegations as to a dispositive issue in a complaint, unsupported by depositions, affidavits, answers to interrogatories or admissions are insufficient to create a material fact issue that can survive a summary judgment motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). Personal involvement by Sides is an element of Mee's *prima facie* case. Mee has not gone beyond the pleadings to establish this element. Therefore, even if Sides were not immune from suit, his motion for summary judgment would be granted.

Accordingly IT IS ORDERED that:

(1) Sides' motion for summary judgment is granted;

(2) Ortega's motion for summary judgment is granted;

(3) Plaintiff's complaint and action are dismissed; and

(4) Each party shall bear his own costs.